UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.:

CHERI ROULEAU,

     Plaintiff,

vs.

CELEBRITY CRUISES, INC.,
a foreign corporation,
and SEASPRAY CRUISES, LTD.
d/b/a Seaspray Tours, a foreign corporation,

     Defendants.

_____/

## COMPLAINT AND
## DEMAND FOR JURY TRIAL

Plaintiff, CHERI ROULEAU (hereinafter "Plaintiff"), by and through her undersigned

counsel, sues CELEBRITY CRUISES, INC., a foreign corporation (hereinafter "CELEBRITY")

and SEASPRAY CRUISES, LTD dba Seaspray Tours, a foreign corporation (hereinafter referred

to as "SEASPRAY"), and in support states as follows:

### I.     PRELIMINARY ALLEGATIONS

### a. The Parties

1.     Plaintiff, CHERI ROULEAU, is a citizen and resident of the state of Florida.

2.     Defendant CELEBRITY CRUISES, INC. is a foreign corporation having its

principal place of business and domiciled in Miami, Florida.

3.     Defendant, SEASPRAY CRUISES, LTD., doing business as "Seaspray Tours", is,

upon information and belief, a foreign corporation licensed under the laws of St. Lucia and does

business as a catamaran excursion operator on behalf of CELEBRITY and other cruise lines.

### b.    Jurisdiction and Venue

4.    The matter in controversy exceeds, exclusive of interest and costs, the sum specified by 28 U.S.C. 1332.

5.    In the event this matter does not come under diversity jurisdiction of the court, then this matter is being brought under the admiralty and maritime jurisdiction of the court pursuant to 28 U.S.C. 1333.

6.    Defendants, at all times material hereto, personally or through an agent:

    a.    Operated, conducted, engaged in or carried on a business venture in this state and/or county or had an office and/or agency in this state and/or county;

    b.    Were engaged in substantial activity within this state; and/or

    c.    Operated vessels in the waters of this state; and/or

    d.    Committed one or more of the acts stated in Florida Statutes, §§ 48.081, 48.181 or 48.193; and/or

    e.    The acts of Defendants set out in this Complaint occurred in whole or in part in this county and/or state.

    f.    The Defendants was engaged in the business of providing to the public, and to the Plaintiff in particular, for compensation, vacation cruises aboard their various vessels.

7.    CELEBRITY, is subject to the jurisdiction of this Court.

8.    Upon information and belief, SEASPRAY, entered into and executed a Standard Excursion Agreement with CELEBRITY.  In this agreement, SEASPRAY, agreed to waive any and all objections to this jurisdiction or venue that SEASPRAY may have, and irrevocably agreed

to submit itself to any suit, action or proceeding arising out of or relating to the Standard Excursion Agreement at the United States District Court for the Southern District of Florida.

9.      The causes of action asserted in this Complaint arise under the General Maritime Law of the United States.

### c.      General Factual Allegations

10.      At all times material hereto, CELEBRITY owned, operated, managed, maintained and/or controlled the vessel "Silhouette".

11.      On January 26, 2018, Plaintiff and her husband boarded a cruise on the Silhouette for a nine (9) night Southern Caribbean cruise.

12.      On January 30, 2018, while on the cruise and at the recommendation of Plaintiff's concierge, Vanesa, and also included in the vessel's Manager's Recommendation for In-Shore excursions brochure, Plaintiff purchased a "coastal cruise catamaran excursion to the Pitons" (hereinafter referred to as "excursion") directly from CELEBRITY.   The excursion was advertised as a mild activity level scenic and leisurely excursion and was scheduled for the following day while the Silhouette was docked in St. Lucia.

13.      On January 31, 2018, despite the high winds and unfavorable sea conditions, the Catamaran excursion was not cancelled.

14.      On January 31, 2018, Plaintiff and her husband, boarded the catamaran for the excursion, and chose seats on the front starboard side and sat in two (2) unsecured white plastic chairs. It was open seating and no instructions regarding safety while onboard were given by either of the Defendants to the Plaintiff.

15.      As the catamaran reached the Pitons, the catamaran stopped and the Plaintiff along with other passengers proceeded to the front of the catamaran to take pictures and selfies with the

Pitons. The captain then turned the catamaran around to head back to the port. As a result of the high winds and rough ocean conditions, waves were splashing over the front of the catamaran and the catamaran was traveling fast directly against the waves causing it to violently buck up and down.

16.     The catamaran's excessive movement and speed against the ocean conditions caused Plaintiff to be unexpectedly thrown out of her seat, where she slammed the ground face first.  Plaintiff's left eye orbit, nose and cheek took all of the impact and caused the Plaintiff to blacked out. When she regained consciousness, Plaintiff ~~threw up~~ vomited on her husband who then assisted her up from the floor.

17.     The Plaintiff, had to be assisted by another passenger who happened to be a paramedic, cleaned her wound, applied pressure and bandaged her up and put ice on her. He directed the crew to get him everything he needed and instructed Plaintiff's husband to bring her directly to the CELEBRITY's medical center to get stitches and get checked upon return to the Silhouette.

18.     The fee for the catamaran excursion was charged to the Plaintiff, and collected from the Plaintiff exclusively by CELEBRITY.

19.     Plaintiff believed that the catamaran excursion was operated by CELEBRITY. Moreover, Plaintiff trusted that being a CELEBRITY catamaran excursion, it would adhere to the highest safety standards in the industry.

20.     CELEBRITY never expressly advised Plaintiff that it was not operating the catamaran excursion or did it advise Plaintiff of the identity of the catamaran excursion operator to allow Plaintiff to inquire about the operator's safety measures and standards.

21.     Plaintiff would not have participated in the subject catamaran excursion had she known the catamaran excursion was not operated by CELEBRITY.

22.     CELEBRITY manifested an apparent agency relationship with the catamaran excursion operator involved, by marketing the catamaran excursion on its website using the CELEBRITY CRUISE LINE logo; selling the catamaran excursion from its website and a desk aboard the ship; and recommending CELEBRITY's catamaran excursions over others not sold through CELEBRITY.

23.     CELEBRITY never identified any entity other than itself as the owner and operator of the catamaran excursion.

24.     CELEBRITY typically obtain payment for the catamaran excursion online and onboard the cruise through the guests' account.

25.     At all times material hereto, CELEBRITY participated in the income and losses generated by the sales and operation of the island tour catamaran excursion.

26.     Upon information and belief, CELEBRITY exercises control over any tour operators in its requirements for tour operation, insurance and safety.

27.     Upon information and belief, CELEBRITY has control over the arrangement, marketing and sales of all tours.

28.     Upon information and belief, any catamaran excursion operators are agents of CELEBRITY, partners with CELEBRITY and/or are joint ventures with CELEBRITY. Any representations of CELEBRITY to the contrary do not control the legal status of the parties. Further, even if the catamaran excursion operator were an independent contractor, CELEBRITY is not relieved of its duty to verify that its representations made in its literature and elsewhere about

its catamaran excursion operators are true, that is, that the "insured partners adhere to the highest safety standards in the industry".

29.     All conditions precedent for filing and maintaining this action have been fulfilled, performed or waived.

**COUNT I – NEGLIGENCE
(AGAINST CELEBRITY)**

Plaintiff realleges, adopts and incorporates by reference the allegations of paragraphs one (1) through twenty-nine (29) as though alleged originally herein.

30.     It was the duty of CELEBRITY to provide Plaintiff with reasonable care under the circumstances.

31.     On or about January 31, 2019, CELEBRITY and/or its agents, servants, and/or employees breached their duty to provide Plaintiff with reasonable care under the circumstances by committing the following acts of omission/commission:

      a.     CELEBRITY knew or should have known of the dangerous conditions of the catamaran, and the rough wind and ocean conditions prior to releasing the Plaintiff to the tour operator that operated the excursion;

      b.     CELEBRITY failed to organize the catamaran excursion in a reasonable careful manner;

      c.     CELEBRITY had knowledge of the hazards to Plaintiff at the catamaran excursion and CELEBRITY failed to warn Plaintiff of the risk and hazards of such catamaran excursion and failed to provide the necessary safety standards and assistance consistent with its promises of safety.

d.      CELEBRITY failed to investigate the safety record of the catamaran excursion operator.

e.      CELEBRITY had control and/or implied authority over the catamaran excursion, and failed to use reasonable care in maintaining the catamaran excursion in a reasonably safe condition and to warn Plaintiff of latent or concealed dangers.

f.      CELEBRITY, in furtherance of its own interests, knew or should have known or should had realized that that the safety of Plaintiff was compromised and in jeopardy.  Despite such knowledge, CELEBRITY provided incorrect and inaccurate information about the safety and condition of the catamaran excursion to Plaintiff.

g.      CELEBRITY negligently misrepresented the conditions of the catamaran excursion to Plaintiff prior to Plaintiff purchasing the catamaran excursion from CELEBRITY.

h.      CELEBRITY failed to have a policy/procedure and/or adequate policies/procedures in place in order to ensure the catamaran excursion was free from any dangerous condition, and/or;

i.      CELEBRITY failed to comply with safety codes and standards designed and promulgated to reduce the risk of the type of incident Plaintiff suffered, from happening, and/or;

j.      Failure to have adequate risk management procedures in place designed to reduce the occurrence of the type of incident suffered by Plaintiff, and/or;

k.   Failure to implement available safety standards designed to reduce and/or prevent the type of incident Plaintiff suffered from happening, all of which resulted in the Plaintiff being injured, and/or;

l.   Knowing from previous similar incidents of the likelihood of such an incident, yet failing to take steps to correct the conditions causing the incident;

m.   CELEBRITY, knew or should have known that the catamaran at the excursion did not have sufficient and necessary safety measures in place to ensure the safety of Plaintiff, if sufficient and necessary safety measures were in place, the incident suffered by Plaintiff could have been avoided;

n.   CELEBRITY, knew or should have known that the high wind and rough ocean conditions were in the projected path of the catamaran excursion; and failed to cancel, prevent, notice, alert and/or advise the Plaintiff, of the unsafe weather conditions along the catamaran's projected path during the excursion;

o.   CELEBRITY, failed to supervise and enforce that the tour operator guides during the catamaran excursion would have the adequate skills to operate the catamaran in a fair and reasonable matter under the foreseeable and/or known weather conditions;

p.   CELEBRITY had actual notice and constructive notice of the insufficient safety measures aboard the catamaran, and despite known such fact, sold the catamaran excursion to the Plaintiff;

q.   CELEBRITY and/or its agents, servants, and/or employees failed to recognize that Plaintiff was in peril, failed to the aid the Plaintiff and failed to act and secure the Plaintiff;

r.   CELEBRITY's omission and failure to act when the Plaintiff was at peril played a material part in bringing about damages upon Plaintiff while at the catamaran excursion. The incident would have not occurred should CELEBRITY would have acted as required obliged.

s.   CELEBRITY's failure to implement available safety and security standards designed to reduce and/or prevent the type of incident Plaintiff suffered aboard the catamaran excursion from happening, all of which resulted in the Plaintiff being injured, and/or;

t.   CELEBRITY knew from previous similar incidents of the likelihood of such an incident occurring aboard the catamaran excursion, yet failing to take steps to correct the conditions that caused injuries and damages to the Plaintiff.

32.   At all times material hereto, CELEBRITY and/or its agents, servants, and/or employees was an active participant in the chain of events that resulted in damages to Plaintiff. CELEBRITY had the right to exercise supervision, and did, in fact exercise, supervision and control over the tour operator and the snorkeling catamaran excursion.

33.   At all times material hereto, CELEBRITY and/or its agents, servants, and/or employees negligently failed investigate and/or determine the hazards of the catamaran excursion

to Plaintiff, failed to eliminate the hazards, failed to modify and/or minimize the hazard and failed to properly warn Plaintiff of the hazard.

34.     At all times material hereto, CELEBRITY and/or its agents, servants, and/or employees knew of the foregoing conditions causing Plaintiff's damages and did not prevent Plaintiff's exposure to these conditions, or the conditions existed for a sufficient length of time so that CELEBRITY in the exercise of reasonable care under the circumstances should have learned of them and prevented Plaintiff's exposure to them.

35.     At all times material hereto, CELEBRITY and/or its agents, servants, and/or employees knew of the serious nature of Plaintiff's condition after having being injured and did not properly direct Plaintiff to obtain immediate medical care or otherwise evaluate properly evaluate Plaintiff's medical condition on a timely basis.

36.     CELEBRITY and/or its agents, servants, and/or employees' breaches of duty were the direct proximate cause of injury and damage to Plaintiff.

37.     As a direct and proximate result of the negligence of CELEBRITY, Plaintiff was injured about her body as a whole, neck, back and knees, permanent scaring to her face, traumatic brain injury/concussion, suffered severe physical pain, mental and emotional anguish, loss of enjoyment of life, physical disability, impairment, loss income, inconvenience in the normal pursuits of life, disfigurement and other mental and/or nervous disorders. Suffered aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of her injuries and suffered physical handicap. The injuries and damages are permanent or continuing in nature and Plaintiff will suffer the losses and impairments in the future. In addition, Plaintiff lost the benefit of his vacation cruise for which she incurred expenses, including, but not limited to the cost of the cruise ticket for herself and her husband.

WHEREFORE, Plaintiff demands judgment for all damages recoverable under the law against the Defendant as well as court costs and further demands trial by jury for all such issues so triable as a matter of right.

## COUNT II - NEGLIGENT SELECTION AND RETENTION OF TOUR OPERATOR (AGAINST CELEBRITY)

Plaintiff realleges, adopts and incorporates by reference the allegations of paragraphs one (1) through twenty-nine (29) as though alleged originally herein.

38.     CELEBRITY had the duty to exercise reasonable care to employ a competent and careful tour operator to perform the catamaran excursion;

39.     CELEBRITY breached its duty by:

a.     failing to reasonably inquire into the credentials and qualifications of the tour operator;

b.     failing to periodically request the tour operator to provide Defendant with safety inspection reports of the catamaran excursion it conducted;

c.     selecting a tour operator that failed to properly instruct, guide, supervise and ensure that Plaintiff was afforded safety during the catamaran excursion;

d.     failing to institute safety inspection procedures to make sure that the dangerous conditions of the catamaran excursion were discovered and made safe;

e.     selecting a tour operator that failed to operate the catamaran excursion in a reasonably safe manner; and/or

f.     selecting a tour operator that failed to establish, implement and have emergency procedures in place to ensure the safety of Plaintiff; and/or

g.      selecting a tour operator that failed to provide Plaintiff with the minimum standards of emergency medical attention.

40.    CELEBRITY knew or reasonably should have known that the tour operator, was incompetent or unfit to conduct the subject catamaran excursion:

a.      if it had reasonably inquired into the credentials and qualifications of the tour operator;

b.      if it had requested the tour operator to provide CELEBRITY with safety inspection reports of the catamaran excursion it had conducted;

g.      if it had investigated the unreasonably hazardous conditions of the catamaran excursion;

h.      because the tour operator's incompetence and/or unfitness existed for a sufficient length of time so that CELEBRITY should have known of it by the exercise of ordinary care.

41.    CELEBRITY and/or its agents, servants, and/or employees' breaches of duty were the direct proximate cause of injury and damage to Plaintiff.

42.    As a direct and proximate result of the negligence of CELEBRITY, Plaintiff was injured about her body as a whole, neck, back and knees, permanent scaring to her face, traumatic brain injury/concussion, suffered severe physical pain, mental and emotional anguish, loss of enjoyment of life, physical disability, impairment, loss income, inconvenience in the normal pursuits of life, disfigurement and other mental and/or nervous disorders. Suffered aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of her injuries and suffered physical handicap. The injuries and damages are permanent or continuing in nature and Plaintiff will suffer the losses and impairments in the future. In addition,

Plaintiff lost the benefit of his vacation cruise for which she incurred expenses, including, but not limited to the cost of the cruise ticket for herself and her husband.

WHEREFORE, Plaintiff demands judgment for all damages recoverable under the law against CELEBRITY as well as court costs and further demands trial by jury for all such issues so triable as a matter of right.

### COUNT III - APPARENT AGENCY OR AGENCY BY ESTOPPEL CLAIM
### (AGAINST CELEBRITY)

Plaintiff realleges, adopts and incorporates by reference the allegations of paragraphs one (1) through twenty-nine (29) as though alleged originally herein.

43.   At all times material hereto, CELEBRITY took actions, made manifestations and representations that caused Plaintiff to believe that the tour operator and the catamaran EXCURSION guides had authority to act for the benefit of Defendant. These actions, manifestations and representations included:

  a.   CELEBRITY advertised in a series of internet, brochure, and other media about the availability of purchasing catamaran excursion from CELEBRITY;

  b.   CELEBRITY allowed its name to be utilized in connection with the advertising of the catamaran excursion;

  c.   CELEBRITY made all arrangements for the catamaran excursion without effectively disclosing to Plaintiff that the catamaran excursion was being run by another entity (and/or entities);

  d.   CELEBRITY represented on its website and shore catamaran excursion brochure that catamaran excursions are planned by partners;

e.     CELEBRITY marketed the catamaran excursion using its company logo on its website and/or in its brochures and/or its ship without effectively disclosing to Plaintiff that said catamaran excursion was being run by another entity (and/or entities);

f.     CELEBRITY maintained a catamaran excursion desk on its ship whereby it offered, sold, provided information to, and answered questions of passengers about the catamaran excursion without effectively disclosing to Plaintiff that the catamaran excursion was being run by another entity (and/or entities);

g.     Plaintiff's exclusive contract concerning the catamaran excursion was with CELEBRITY;

h.     CELEBRITY recommended to Plaintiff to not engage in catamaran excursions, tours, or activities that are not sold through CELEBRITY as CELEBRITY has no familiarity with other tours or their operations;

i.     CELEBRITY assured Plaintiff that its insured partners adhered to the highest safety standards in the industry;

j.     The fee for the catamaran excursion was charged to the Plaintiff, and collected from the Plaintiff, exclusively by CELEBRITY;

k.     Plaintiff's receipts for the purchase of the catamaran excursion were issued exclusively by CELEBRITY; and/or

l.     CELEBRITY integrated catamaran excursions into the cruise vacation experience.

44.     Plaintiff reasonably relied on the above, to his detriment, so as to believe that the tour operator's personnel were the agents, servants and/or employees of CELEBRITY in choosing the subject catamaran excursion.

45.     It was reasonable to believe that the tour operator and catamaran excursion personnel were CELEBRITY's agents, servants and/or employees because Plaintiff booked, paid for and made all necessary arrangements for the subject catamaran excursion with CELEBRITY. CELEBRITY's actions caused Plaintiff to believe that the tour operator and/or catamaran excursion guides had authority to act on CELEBRITY's behalf. At no time did the tour operator and catamaran EXCURSION guides represent to the Plaintiff in particular or the cruise ship's passengers in a meaningful way that the tour operator and catamaran Excursion's personnel were not agents, servants and/or employees of CELEBRITY.

46.     Plaintiff's reasonable reliance was detrimental because she would not have booked, paid for and/or participated in the subject catamaran excursion or incurred any injuries had she known that the subject catamaran excursion was not operated by CELEBRITY.

47.     The foregoing acts of negligence of CELEBRITY and/or tour operator and catamaran excursion guides were a direct and proximate cause of the Plaintiff's injuries.

49.     As a direct and proximate result of the negligence of CELEBRITY, Plaintiff was injured about her body as a whole, neck, back and knees, permanent scaring to her face, traumatic brain injury/concussion, suffered severe physical pain, mental and emotional anguish, loss of enjoyment of life, physical disability, impairment, loss income, inconvenience in the normal pursuits of life, disfigurement and other mental and/or nervous disorders. Suffered aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment

of her injuries and suffered physical handicap. The injuries and damages are permanent or continuing in nature and Plaintiff will suffer the losses and impairments in the future. In addition, Plaintiff lost the benefit of his vacation cruise for which she incurred expenses, including, but not limited to the cost of the cruise ticket for herself and her husband.

WHEREFORE, Plaintiff demands judgment for all damages recoverable under the law against the CELEBRITY as well as court costs and further demands trial by jury for all such issues so triable as a matter of right.

## COUTN IV - NEGLIGENCE
## (AGAINST SEASPRAY)

Plaintiff realleges, adopts and incorporates by reference the allegations of paragraphs one (1) through twenty-nine (29) as though alleged originally herein.

50.     Upon information and belief, SEASPRAY and CELEBRITY entered into and executed a Standard Shore Excursion Agreement (hereinafter referred to as the "AGREEMENT").

51.     Upon information and belief, in the AGREEMENT, SEASPRAY's duties toward Plaintiff are encompassed in part as follows:

    a.      organize the catamaran excursion in a reasonable careful manner;

    b.      to warn Plaintiff and CELEBRITY of the risk and hazards of such catamaran excursion and provide the necessary safety standards and assistance consistent with its promises of safety.

    c.      to use reasonable care in maintaining the catamaran excursion in a reasonably safe condition and to warn Plaintiff of latent or concealed dangers.

d.     to accurately represent the conditions of the catamaran excursion to plaintiff prior to plaintiff purchasing the catamaran excursion from CELEBRITY.

e.     to have a policy/procedure and/or adequate policies/procedures in place in order to ensure the catamaran excursions are free from any dangerous condition, and/or;

f.     to comply with safety codes and standards designed and promulgated to reduce the risk of the type of incident Plaintiff suffered, from happening, and/or;

g.     to have adequate risk management procedures in place designed to reduce the occurrence of the type of incident suffered by Plaintiff, and/or;

h.     to implement available safety standards designed to reduce and/or prevent the type of incident Plaintiff suffered from happening, all of which resulted in the Plaintiff being injured, and/or;

i.     to know from previous similar incidents of the likelihood of such an incident, and to take steps to correct the conditions that caused prior incident.

52.  SEASPRAY breached its duty by:

a.     failing to notify CELEBRITY of a series of events and occurrences, described in part in allegation fifty-one (51) above, as agreed with CELEBRITY, and more specifically described in the AGREEMENT that it executed with CELEBRITY, and/or

b.   selecting and retaining guides that were not fit to properly instruct, guide, supervise and ensure that Plaintiff was afforded safety during catamaran excursion, and/or;

c.   failing to institute safety inspection procedures to make sure that the dangerous conditions of the catamaran excursion were discovered and made safe, and/or;

d.   selecting guides that failed to operate the catamaran excursion in a reasonably safe manner; and/or

e.   selecting guides that failed to establish, implement and have emergency procedures in place to ensure the safety of Plaintiff; and/or

f.    selecting guides that failed to provide Plaintiff with the minimum standards of emergency medical attention, and/or;

g.   Failure to provide any and/or immediate medical treatment to Plaintiff during the catamaran excursion, and/or;

h.   Failure to supervise Plaintiff while, during and after the catamaran excursion, and/or;

i.   SEASPRAY know or should have known that if Plaintiff was injured in such a matter as Plaintiff did, that Plaintiff had signs of an injury that required immediate medical attention.

j.   Failure to only use trained and properly licensed (in compliance with any and all government regulations) individuals to operate the catamaran excursion.

k.   Failure to identify an emergency and/or that the Plaintiff was in peril during the catamaran excursion, who was also a CELEBRITY guest.

l.   Failure to promptly communicate with CELEBRITY of Plaintiff's incident

m.   SEASPRAY had knowledge of the hazards to Plaintiff at the catamaran excursion and failed to warn Plaintiff of the risk and hazards of such catamaran excursion and failed to provide the necessary safety standards and assistance consistent with its promises of safety.

n.   SEASPRAY failed to use reasonable care in maintaining the catamaran excursion in a reasonably safe condition and to warn Plaintiff of latent or concealed dangers.

o.   SEASPRAY, in furtherance of its own interests, knew or should have known or should had realized that that the safety of Plaintiff was compromised and in jeopardy.  Despite such knowledge, SEASPRAY provided incorrect and inaccurate information about the safety and condition of the catamaran excursion to Plaintiff.

p.   SEASPRAY negligently misrepresented the conditions of the catamaran excursion to Plaintiff prior to Plaintiff purchasing the catamaran excursion from CELEBRITY.

q.   SEASPRAY failed to have a policy/procedure and/or adequate policies/procedures in place in order to ensure the catamaran excursion was free from any dangerous condition, and/or;

r.   SEASPRAY failed to comply with safety codes and standards designed and promulgated to reduce the risk of the type of incident Plaintiff suffered, from happening, and/or;

s.   Failure to have adequate risk management procedures in place designed to reduce the occurrence of the type of incident suffered by Plaintiff, and/or;

t.   Failure to implement available safety standards designed to reduce and/or prevent the type of incident Plaintiff suffered from happening, all of which resulted in the Plaintiff being injured, and/or;

u.   Knowing from previous similar incidents of the likelihood of such an incident, yet failing to take steps to correct the conditions causing the incident;

v.   SEASPRAY, knew or should have known that the catamaran at the excursion did not have sufficient and necessary safety measures in place to ensure the safety of Plaintiff, if sufficient and necessary safety measures were in place, the incident suffered by Plaintiff could have been avoided;

w.   SEASPRAY, knew or should have known that the high wind and rough ocean conditions were in the projected path of the catamaran excursion; and failed to cancel, prevent, notice, alert and/or advise the Plaintiff, of the unsafe weather conditions along the catamaran's projected path during the excursion;

x.   SEASPRAY, failed to supervise and enforce that the tour operator guides during the catamaran excursion would have the adequate skills to operate

the catamaran in a fair and reasonable matter under the foreseeable and/or known weather conditions;

y.      SEASPRAY had actual notice and constructive notice of the insufficient safety measures aboard the catamaran, and despite known such fact, sold the catamaran excursion to the Plaintiff;

z.      SEASPRAY and/or its agents, servants, and/or employees failed to recognize that Plaintiff was in peril, failed to the aid the Plaintiff and failed to act and secure the Plaintiff;

aa.     SEASPRAY's omission and failure to act when the Plaintiff was at peril played a material part in bringing about damages upon Plaintiff while at the catamaran excursion. The incident would have not occurred should SEASPRAY would have acted as required obliged.

bb.     SEASPRAY knew or reasonably should have known, as the tour operator of the catamaran excursion and with the duties and responsibilities discharged upon him by the AGREEMENT agreed to with CELEBRITY, that Plaintiff, was at peril and/or in a condition that SEASPRAY knew or should have known to be abnormal under the circumstances, for which Plaintiff required immediate medical attention and SEASPRAY failed to obtain the necessary medical attention to Plaintiff.

cc.     SEASPRAY's failure to establish, implement and have emergency procedures in place to ensure the safety of Plaintiff; prevented and limited Plaintiff's access to immediate medical attention that she urgently needed. Should the Plaintiff abnormal condition and/or illness been identified and

immediate medical treatment provided to the Plaintiff, Plaintiff's injuries and damages as a result of SEASPRAY's negligence would have been mitigated and/or evaded at its best.

54.     SEASPRAY and/or its agents, servants, and/or employees' breaches of duty were the direct proximate cause of injury and damage to Plaintiff.

SEASPRAY's negligence in the lack of having trained personnel to identify and care for its guests with signs of injury such as Rouleau did when she was injured aboard the catamaran excursion.   SEASPRAY should have known better, notified CELEBRITY and early treatment would have prevented much of her damages.

55.     As a direct and proximate result of the negligence of CELEBRITY, Plaintiff was injured about her body as a whole, neck, back and knees, permanent scaring to her face, traumatic brain injury/concussion, suffered severe physical pain, mental and emotional anguish, loss of enjoyment of life, physical disability, impairment, loss income, inconvenience in the normal pursuits of life, disfigurement and other mental and/or nervous disorders. Suffered aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of her injuries and suffered physical handicap. The injuries and damages are permanent or continuing in nature and Plaintiff will suffer the losses and impairments in the future. In addition, Plaintiff lost the benefit of his vacation cruise for which she incurred expenses, including, but not limited to the cost of the cruise ticket for herself and her husband.

WHEREFORE, Plaintiff demands judgment for all damages recoverable under the law against the SEASPRAY as well as court costs and further demands trial by jury for all such issues so triable as a matter of right.

Dated this ___ day of January, 2019.

CHARLIP LAW GROUP, LC
*Counsel for Plaintiff*
11900 Biscayne Blvd.
Suite 200
North Miami, Florida 33181
Phone: (305) 354-9313
Fax: (305) 354-9314

assistant@charliplawgroup.com
paralegal@charliplawgroup.com

By: _____
David H. Charlip, B.C.S.
Florida Bar No.: 329932